IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:14cr412-MHT |
| | ) | (WO) |
| JORGE HERNANDEZ-RAMIREZ | ) | |

OPINION

Defendant Jorge Hernandez-Ramirez pled guilty to
unlawful reentry, pursuant to 8 U.S.C. § 1326(a) and
(b)(2).  At his sentencing on November 20, 2014, the
court granted his motion for a downward variance and
sentenced him to eight months custody.  This opinion
explains why.

I.  BACKGROUND

Born in Mexico, Hernandez-Ramirez first moved to
the United States over 25 years ago, when he was 19
years old. Three years later, he was arrested by
immigration enforcement for possession with intent to

distribute 2.4 kilograms of marijuana, for which he received a 90-day prison sentence and was deported.

Hernandez-Ramirez returned to the United States in the next several years and moved to Alabama. There, he was married and adopted his wife's three young children as his own. He and his wife also had a fourth child. His wife, their four children, and now his grandchildren are all United States citizens. During his time in Alabama, Hernandez-Ramirez worked his way up from lower-level jobs at mechanic shops to starting and owning his own auto-repair business. For 12 years, he operated his own business, employing members of the community and paying taxes. His wife also started a small business, and their two sons joined the United States military. As his son in the Air Force testified, Hernandez-Ramirez focused on working hard and ensuring his children excelled in their education. His family was active in the community and in their

2

church.   Three of the four children remain in Alabama while one works in Washington, D.C.

After around two decades in Alabama, Hernandez-Ramirez was arrested for unlawfully reentering the United States.  This court sentenced him to probation in early 2013 and put him in the custody of immigration services, but urged the immigration court not to deport him. He was then removed to a holding facility in Louisiana. Despite hiring an immigration lawyer and attempting to avoid deportation, Hernandez-Ramirez was deported from the United States to Mexico.[1]

---

1.   Hernandez-Ramirez refused to sign and fingerprint deportation documents on the advice of his lawyer.  He alleges that, in an effort to force him to sign and fingerprint, immigration services removed him from the bus transporting him from the detention facility to the airport for deportation and knocked him to the ground, causing bruising on his wrists and cuts to his finger.   The court credits this testimony and condemns the undue force used by immigration services. However, the court will not provide a more in-depth analysis of this event because it does not affect the sentence imposed in this case.

Soon after returning to Mexico, Hernandez-Ramirez faced threats of violence. A family relation was kidnapped by members of the Gulf cartel, and Hernandez-Ramirez was asked to pay ransom. When Hernandez-Ramirez told the members of the gang that he did not have the money, they threatened to kidnap him. To flee this violence and return to his family, Hernandez-Ramirez reentered the United States less than a year after he was deported.

In April 2014, Hernandez-Ramirez was arrested and pled 'no contest' to public intoxication in Texas. The police had noticed a vehicle that was reported as stolen and followed that vehicle into a gas-station parking lot. Hernandez-Ramirez was a passenger in the vehicle. The driver had earlier picked up Hernandez-Ramirez to fix a car the driver had at his house. Hernandez-Ramirez denied any knowledge that the car was stolen. The driver corroborated this story, and Hernandez-Ramirez was not charged with theft.

4

However, after interviewing Hernandez-Ramirez and determining he did not steal the car, the officer claimed that Hernandez-Ramirez was drunk and posed a danger to himself or others.  The officer then arrested him for public intoxication. Hernandez-Ramirez disputes that he was drunk or a danger to himself or others, but he pled 'no contest' and agreed to pay a $ 91 fine. United States Probation contacted immigration services, and it concluded that Hernandez-Ramirez unlawfully reentered.

Hernandez-Ramirez was back in front of this court in November 2014 for revocation of his previous sentence of probation and new sentencing for unlawful reentry.  The court had already accepted a plea bargain on the revocation for a United States Sentencing Guidelines sentence of four months in custody and one year of supervised release to be served consecutively with the sentence to be imposed in the new unlawful-reentry case.  The court now turns to

5

explaining the eight-month sentence imposed for the unlawful reentry.

## II. DISCUSSION

Hernandez-Ramirez's conviction carries a maximum custodial sentence of 20 years. <u>See</u> 8 U.S.C. § 1326(b)(2). As described below, the Guidelines range is 15 to 21 months. The government sought a sentence within this range, and probation recommended 18 months. Hernandez-Ramirez moved for a downward variance to six months.

### A. Hernandez-Ramirez's Guidelines Calculations

To determine a defendant's sentence, the court first calculates the total-offense level under the United States Sentencing Guidelines. To do so, the court starts with the base level for the offense and then determines whether any enhancements or reductions apply. The court then calculates the Guidelines

6

sentence given the particular defendant's criminal history.

The base-offense level for reentry of removed aliens, 8 U.S.C. § 1326, is eight points. USSG § 2L1.2(a). Hernandez-Ramirez also received an eight-point enhancement because he had previously committed a drug-trafficking offense, for which he received less than 13 months and for which he did not receive criminal-history points. See id. § 2L1.2(b)(1)(B). The relevant section states:

> "(a) Base Offense Level: 8
>
> "(b) Specific Offense Characteristic
>
> (1) Apply the Greatest: If the defendant previously was deported, or unlawfully remained in the United States, after—
>
>   (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by

**16** levels if the conviction receives criminal history points under Chapter Four or by **12** levels if the conviction does not receive criminal history points;

(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by **12** levels if the conviction receives criminal history points under Chapter Four or by **8** levels if the conviction does not receive criminal history points;

(C) a conviction for an aggravated felony, increase by **8** levels;

(D) a conviction for any other felony, increase by **4** levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **4** levels."

Id. (emphasis in original).  With this enhancement, his offense level is 16 points.  After subtracting three base points for acceptance of responsibility, his total-offense level is 13.

Hernandez-Ramirez has a criminal-history level of II based on a total of three criminal-history points.

8

Hernandez received one criminal-history point for his past unlawful reentry and an additional two points because he committed the current offense while on probation. <u>See</u> USSG §§ 4A1.1(c), (d).

The Guidelines range for a defendant with a 13-point offense level and a criminal history category of II is 15 to 21 months.

### B. Judicial Discretion in Sentencing

Having reviewed the Guidelines calculation, the court next determines a reasonable sentence. Under the Supreme Court's current <u>Booker</u> framework, the Sentencing Guidelines are not mandatory. <u>See</u> <u>United States v. Booker</u>, 543 U.S. 220 (2005). Instead, the district court must independently determine a reasonable sentence by applying the sentencing factors listed in 18 U.S.C. § 3553(a):

> "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

"(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

"(3) the kinds of sentences available;

"(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the [sentencing] guidelines ...

"(5) any pertinent policy statement [by the Sentencing Commission] ...

"(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

"(7) the need to provide restitution
to any victims of the offense."

While calculations by the Guidelines are an attempt
to approximate these diverse factors, a judge may, in
the course of an individual sentencing, determine that
"the case at hand falls outside the 'heartland' to
which the Commission intends individual Guidelines to
apply [or] the Guidelines sentence itself fails
properly to reflect § 3553(a) considerations." <u>Rita v.
United States</u>, 551 U.S. 338, 351 (2007).

## C. Hernandez-Ramirez's Sentence

During this sentencing, the court was confronted
with a very serious question that was well articulated
by both the government and Hernandez-Ramirez.  At its
core, the question was how best to punish someone for
returning home to his community and his family when he
has no legal right to do so; that is, how to sentence
someone for doing something fundamentally human, but
that also violates the law of the United States.

11

Applying the sentencing factors in 18 U.S.C. § 3553(a), the court found that a sentence of eight months is reasonable.

Before delving into the loftier ideas of home and family, the court will start its explanation with the nuts and bolts of the Sentencing Guidelines. As discussed above, Hernandez-Ramirez has a base offense level of eight and then received an eight-point enhancement for a 1990 conviction of possession with intent to distribute two to four kilograms of marijuana. With a three-point deduction for acceptance of responsibility, Hernandez-Ramirez ended up with an offense level of 13. Combined with his criminal history Level of II, he has a Guideline range of 15 to 21 months.

The court first notes that the unlawful reentry itself was driven, in part, by fear of violence in Mexico. Hernandez-Ramirez testified that he feared the Gulf cartel was targeting him for refusing to pay

ransom for family members and threatened to kidnap him.
This differs from the heartland case where a person
returns to the United States for economic opportunity.
See United States v. Estavillo-Avendano, 2014 WL
4792595, at *4 (M.D. Ala. 2014) (Thompson, J.) (holding
that reentering based on fear of violence was a reason
for downward variance).

This case is also well outside the heartland of
cases that receive an 8-point enhancement for drug
trafficking or an aggravated felony. See USSG § 2L1.2.
Hernandez-Ramirez received the possession with intent
to distribute 2.4 kilograms of marijuana conviction
when he was 23 years old, which is a quarter century
ago. See Estavillo-Avendano, 2014 WL 4792595, at *6.
(finding that downward variance was merited, in part,
by defendant's changed life since he committed a
serious drug-trafficking crime 13 years earlier).
Since that time, he married a (now naturalized) U.S.
citizen, helped raise children--four of whom are U.S.

13

citizens and two of whom serve in the U.S military--and run his own company.  The government does not suggest, and this court does not believe, that Hernandez-Ramirez will return to distributing drugs. There is also no suggestion that the disputed public-intoxication charge, for which Hernandez-Ramirez received a $ 91 fine, indicates that he is a danger to the public. See 18 U.S.C. § 3553(a)(2)(C). Even if he would presumably have been within the heartland of cases for the four-point enhancement for a prior felony under USSG § 2L1.2(b)(1)(D), he would have had a Guidelines range of 6 to 12 months.  On this ground alone, then, the court could give an eight-month sentence.

However, these issues are not even the most compelling reasons for the court to vary downward. Hernandez-Ramirez has spent half his life, and the vast majority of his adult life, in the United States. For 12 years, he owned an auto-repair shop, employed members of the community, and paid taxes. He helped

14

friends and neighbors and was active in his church.
His wife, an American citizen, lives in the United
States and owns a small business here.  Their four
children, all American citizens, went to school in the
United States, work in the United States, and have
their own children living in the United States.  Two
are members of the United States military, willing to
risk their life for a country that will not allow their
father to enter.  People have different definitions of
what it means to be an American, but whatever the
definition is, Hernandez-Ramirez would seem to fit it.
He and his family are as American as any family this
court has known.  See 18 U.S.C. § 3553(a)(1) (mandating
that the court consider the history and characteristics
of the defendant).

But, as American as he may be, Hernandez-Ramirez
does not have the legal right to be in this country.
Put differently, Hernandez-Ramirez may have nowhere to
go, but he cannot stay here.  This brings the court to

deterrence and respect for the law.   <u>See</u>   18
U.S.C. § 3553(a)(2)(B). The government emphasized that
this is Hernandez-Ramirez's second reentry in as many
years and that a variance in this case will send a
message to immigrants in similar situations that they
too can unlawfully enter the United States to return to
their families.

The court rejects this argument for two reasons.
First, the court finds Hernandez-Ramirez credible that
he and his wife are preparing to leave this country and
will not re-offend.  He and his wife testified that he
returned to help repair and sell his house in Alabama
in preparation for moving elsewhere.  He also testified
to the strain the repeated arrests have had on his
family.  Most of all, however, the court believes
Hernandez-Ramirez will not re-offend because he has no
hope for actually living with his family in the United
States.  He will not be able to come to Alabama through
unlawful reentry--he has already been arrested twice

16

for that.   He will not get asylum--his lawyer has already confirmed as much.   And, he will get no sympathy from the immigration system--he has tried every legal avenue and been turned away.   Based on his testimony, the court finds Hernandez-Ramirez knows that, despite having had a business in this country, a wife who is an American citizen, and two sons willing to die for this country, he will not be able to live with them here.   Absent congressional action or wide use of executive discretion that would change his status, his only hope for being with his family is moving elsewhere.

    The government argued that the court must send Hernandez-Ramirez to prison for the Guidelines range to send a message to other immigrants in similar situations; yet, at the same time, the government admitted that few parents would heed a legal order if it meant separation from their children.   As much as the court can attempt to provide deterrence by jailing

immigrants for long periods based mainly on crimes they
committed decades ago, a person whose life and family
are in this country may be hard to deter.  Indeed, the
normal person would likely think less of any parent
that does not seek to see and care for his children and
grandchildren.[2]

     Nevertheless, in deference to the rule of law, the
court gave Hernandez-Ramirez a harsher sentence than
both the probation sentence he received in his last
unlawful reentry and the downward variance to six
months custody he had requested.  While the court
recognizes the many reasons for a downward variance, it
still imposed a sentence of eight months of custody
because Hernandez-Ramirez disobeyed the same law twice
within a year.  As detailed above, the court varied
downward based on the nature and circumstances of the
offense and the history and characteristics of the

_____

     2.  As noted above, the reason the court believes
Hernandez-Ramirez will not re-offend in this case is
because his wife is leaving the country with him.

defendant, and because the defendant does not pose a danger to the public. 18 U.S.C. § 3553(a).

As a final observation, the court notes that it has truly stepped through the looking glass in these unlawful reentry proceedings. The government recommended up to 21 months in prison for a person who was a productive member of this country and community, based mainly on an enhancement for a crime he committed 25 years ago. Hernandez-Ramirez had to argue that he did not need a long prison sentence, in addition to deportation, to deter him from reentering the country; put differently, he had to argue that after multiple past deportations as well as an impending one, he did not need a long prison sentence to show that he has no hope of living with his family in the United States. This is the law, but it is perverse. The last time courts encountered such an occasion, where the law seemed so obviously imperfect, district courts

19

disregarded the Guidelines as inconsistent with the sentencing factors.  See <u>Kimbrough v. United States</u>, 552 U.S. 85, 110 (2007) (noting that the district court varied downward because it found the disparity in Guidelines punishments for crack and powder cocaine crimes unreasonable under 18 U.S.C. § 3553(a)).  The Supreme Court affirmed such efforts in <u>Kimbrough</u>.  <u>Id</u>. at 110 (holding that the district court's downward variance "should survive appellate inspection").  Although the court does not rely on <u>Kimbrough</u> today, it seriously questions whether courts should not again play this role.

***

Having considered the factors stated above, the court sentenced Hernandez-Ramirez to eight months custody.

DONE, this the 1st day of December, 2014.

<u>/s/ Myron H. Thompson</u>
UNITED STATES DISTRICT JUDGE